**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| STEPHEN J. DUNN | ) | Case No. 23-30097 |
| | ) | |
| Debtors. | ) | |

**KINETIC ADVANTAGE, LLC'S OBJECTION**
**TO DEBTOR'S SUBCHAPTER V PLAN OF REORGANIZATION**
**[Filing No. 73]**

Creditor Kinetic Advantage, LLC ("**Kinetic**"), by counsel, hereby submits this Objection to *Debtor'* [sic] *Subchapter V Plan of Reorganization* [Filing No. 73] (the "**Plan**"). Kinetic objects to Debtor's Plan on numerous grounds including that it does not meet the "best interest of creditors" test, does not appear to meet the "liquidation test", includes terms that are speculative, at best, and is ultimately not proposed in good faith. In support of its Objection, Kinetic states as follows:

**Jurisdiction and Venue**

1. This Court has jurisdiction to consider this Objection pursuant to 28 U.S.C. §§157 and 1334.

2. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3. Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

**Procedural History, Factual Background, and Loan Facilities**

4. Debtor, Stephen J. Dunn ("**Debtor**"), initiated the above-captioned bankruptcy by the filing of a voluntary petition seeking protection under Subchapter V of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") on February 1, 2023 (the "**Petition Date**") [Filing No. 1].

5. On February 1, 2023, the Court issued a *Notice of Chapter 11 Bankruptcy Case* [Filing No. 4], which set May 12, 2023 as the deadline to bring an action objecting to discharge under 11 U.S.C. § 727, to challenge dischargeability of certain debts under 11 U.S.C. § 523, or to pursue such actions under any other relevant section of the Bankruptcy Code.

6. On March 30, 2023, Kinetic filed a *Motion for Rule 2004 Examination* [Filing No. 53] (the "**2004 Motion**"), which Motion was granted by the entry of an Order dated April 3, 2023 [Filing No. 59] (the "**2004 Order**").

7. Pursuant to the 2004 Order, Debtor had through May 3, 2023 to produce documents requested by Kinetic and Kinetic may conduct a 2004 Examination thereafter.

8. Kinetic has tentatively scheduled June 8, 2023 as the date to conduct its 2004 Examination of Debtor.

9. On April 12, 2023, Kinetic filed a *Motion to Enlarge Deadline to Object to Debtor's Election to Have Subchapter V of Chapter 11 Apply* [Filing No. 65] (the "**Designation Motion**"), which motion was granted by an Order entered on April 14, 2023 [Filing No. 67] (the "**Designation Order**"), which extends the deadline for objections to Debtor's Subchapter V designation to June 12, 2023 (the "**Designation Deadline**").

10. On April 28, 2023, Kinetic filed a *Motion for Extension of Deadline to Object to Debtor's Discharge or to Challenge Dischargeability of Certain Debts* [Filing No. 71].

11. Debtor filed the Plan on May 2, 2023 and thereafter, on May 4, 2023, an *Order and Notice Scheduling Hearing on Chapter 11 Plan and Fixing Time to Object* [Filing No. 82] was entered which establishes May 31, 2023 as the deadline for objections to confirmation and scheduled a hearing for June 14, 2023.

12. Pursuant to an Order dated May 17, 2023, Debtor has through June 19, 2023 to file Amended Schedules to resolve the objections to exemptions[1] filed by the Subchapter V Trustee and Kinetic [Filing Nos. 60 & 64].

13. Debtor's obligation to Kinetic is evidenced by a Demand Promissory Note and Security Agreement (the "**Note**") executed by Craz E. Carz, Inc. d/b/a Dunn Deal ("**Dunn Deal**") and the Unlimited Continuing Individual Personal Guaranty (the "**Guaranty**") executed by Debtor, for a credit limit of $500,000.00. A true and accurate copy of the Note and Guaranty are attached to the Proof of Claim filed by Kinetic [Claim No. 8] (the "**Kinetic Claim**") as Exhibit 1 and Exhibit 2, respectively.

14. As further set forth in the Kinetic Claim, Debtor is indebted to Kinetic in the amount of $397,833.70, together with additional interest accruing after March 24, 2023 at the agreed upon rate and all fees and costs incurred to which Kinetic is entitled and not included herein, including without limitation attorneys' fees and costs (the "**Indebtedness**").

## Objection to the Plan and Basis Therefor

As a threshold issue, whether Debtor even qualifies as a Subchapter V debtor must be determined prior to any consideration of confirmation of the pending Plan. Kinetic continues to have serious concerns with respect to Debtor's qualifications as a Subchapter V debtor based on, among other things, the following:

- Debtor does not appear to be engaged in commercial or business activities and did not appear to be engaged in such activities as of the Petition Date or shortly before[2]; and

[1] Based on, among other things, the uncertainty of the exemptions claimed by Debtor and the ramifications related to the liquidation test, Kinetic's undersigned counsel requested additional time to file this objection to confirmation. Debtor would not consent to the requested extension and as a result, Kinetic reserves the right to supplement this objection once it has completed its 2004 Examination and updated exemptions have been filed.

[2] Debtor claims to still be operating a locker rental business, however, notwithstanding requests for

- Based on the proofs of claim on file in this matter – to which Debtor has not filed any objections – Debtor appears to be over the debt limit set forth in 1182(1);

However, even assuming for purposes of this Objection, that Debtor qualifies as a "debtor" under Subchapter V, the Plan cannot be confirmed for the following reasons.

**A. Requirements of Chapter 11 Subchapter V Plan**

14. Pursuant to Section 1190 of the Bankruptcy Code, a plan filed under Subchapter V:

> (1) shall include—
>
> (A) a brief history of the business operations of the debtor;
> (B) a liquidation analysis; and
> (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization;
>
> (2) shall provide for the submission of all or such portion of the future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan; and
>
> (3) notwithstanding section 1123(b)(5) of this title, may modify the rights of the holder of a claim secured only by a security interest in real property that is the principal residence of the debtor if the new value received in connection with the granting of the security interest was—
>
> (A) not used primarily to acquire the real property; and
> (B) used primarily in connection with the small business of the debtor.

11 U.S.C. § 1190.

15. Pursuant to Section 1191 of the Bankruptcy Code, the Court shall confirm a plan if the plan provides for the following:

> (a) TERMS.—

information on this, to date Kinetic has received nothing on which it can confirm that Debtor is actually engaged in commercial or business activities.

The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met.

(b) EXCEPTION.—
Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

(c) RULE OF CONSTRUCTION.—For purposes of this section, the condition that a plan be fair and equitable with respect to each class of claims or interests includes the following requirements:

(1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

(2) As of the effective date of the plan—

(A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or
(B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

(3) (A) (i) The debtor will be able to make all payments under the plan; or
(ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and
(B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

(d) DISPOSABLE INCOME.—For purposes of this section, the term "disposable income" means the income that is received by the debtor and that is not reasonably necessary to be expended —

(1) for—

(A) the maintenance or support of the debtor or a dependent of the debtor; or

(B) a domestic support obligation that first becomes payable after the date of the filing of the petition; or

(2) for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the debtor.

(e) SPECIAL RULE.—
Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section.

11 U.S.C. § 1191.

16. Not only does Debtor's Plan fail to meet the requirements for confirmation set forth in Section 1191 on its face, but there is also nothing provided by Debtor that would support confirmation of the Plan.

**B. Debtor's Plan does not commit disposable income to the Plan and fails to Demonstrate any "Tightening of the Belt" by Debtor.**

17. Because the Plan will not be a consensual plan, based on at a minimum this objection, Debtor is required to commit his disposable income to the Plan. *See* 11 U.S.C. § 1191(b).

18. In the Plan, Debtor estimates his "net monthly income" to be $13,231.66 and his monthly expenses to be $13,081.00[3]. *See* Plan Exhibit A.

---

[3] The projected monthly expenses include "Rent" in the amount of $4,850.00 and "Mortgages and Other Properties" in the amount of "$690.00" per month. However a review of the Operating Reports filed in this matter reflect that the "Rent" payment appears to be a payment exceeding $6,600 per month($6,641.70 in February of 2023, $6,776.86 in March of 2023, and $6776.86 in May of 2023), and the payments on the "Mortgages and Other Properties" appear to be nearly $800 per month. As a result, if Debtor's monthly

19. Based on such estimates, Debtor's Plan provides for a one-time payment of $50,000 – from the sale of property in Kankakee, Illinois – and proposes to assign certain claims held by Debtor against third parties to Debtor's unsecured creditors.

20. Notwithstanding Debtor's assertion in Section 20.1 of the Plan that "Debtor asserts that such Disposable Income is already committed to the Plan", based on even a cursory review of Debtor's financials, nothing could be further from the truth.

21. Based on Debtor's testimony at the 341 Meeting of Creditors, for the year 2022, Debtor received W2(s) in the amount of $769,635. Dividing such amount by 12 results in a gross monthly income of $64,136.25 – significantly more than the asserted "net monthly income" set forth on Exhibit A to the Plan.

22. Moreover, Debtor's Schedule I includes Gross Income of only $17,551.66 – once again significantly less than what Debtor's gross monthly income appears to have been based on his 2022 W2(s).

23. While some of the discrepancy may be explained by a change in employment in 2022, and some of the discrepancy may be explained by the fact that Debtor receives large bonuses and does not have a true "monthly income", Debtor has indicated that he will still receive substantial bonuses – which is demonstrated by a bonus received by Debtor on February 17, 2023 in the amount of $60,397.50. *See* Filing No. 48, Exhibit C.

24. Simply put, Debtor appears to have significantly understated his income in an effort to avoid committing his bonuses (which appear to be his "disposable income") to the Plan.

---

income is accurate – which Kinetic maintains it is not – there may be issues with feasibility of the Plan.

25. Perhaps more troubling, Debtor has not demonstrated the necessary "tightening of the belt" that normally accompanies a filing of bankruptcy. *See e.g. In re McClellan*, 428 B.R. 737, 744 (Bankr. N.D. Ohio 2009) (citing *In re Krohn,* 886 F.2d 123, 128 (6th Cir.1989) and holding that debtors are expected to do some financial belt tightening and may be required to forgo amenities to which they had been accustomed because a "discharge was never meant to be a device for debtors to utilize to pass onto their creditors the costs incurred for the purchase of unnecessary goods and services); *In re Brenneman,* 397 B.R. 866 (Bankr.N.D.Ohio 2008); *see also In re Castellaw,* 401 B.R. 223, 229 (Bankr.N.D.Tex.2009).

26. Specifically, notwithstanding the fact that Debtor is in a bankruptcy, Debtor's Schedules, his Plan, and his projections in his Plan indicate, among other things, that Debtor intends to maintain payments on a secondary/vacation property (the "Clifton Property"); and a recreational vehicle (Polaris).

27. Additionally, Debtor intends to maintain payments on his current primary residence which he purchased less than one (1) year before filing this bankruptcy and was significantly more expensive, with higher monthly payments, than his two (2) previous residences – both of which he owned and sold within a few years of the Petition Date.

28. Debtor's projections reflect that he intends to spend nearly every dollar of his projected income (albeit understated), while making only a nominal payment to his unsecured creditors.

29. Debtor's projections contained in Exhibit A of the Plan, very clearly demonstrate a lack of required "tightening of the belt".

30. To confirm any plan presented in this matter, Debtor should be required to (i) commit all of his bonuses for a period of five (5) years to be paid to his general unsecured creditors; (ii) tighten his belt and eliminate certain unnecessary expenses; and (iii) continue to provide monthly reports, so that his creditors can monitor his finances.

**C. Debtor's Plan does not meet the "Best Interest of the Creditors Test".**

31. Section 1191(c)(2)(B), requires that for a plan to be confirmed, "the value [as of the effective date of a plan] of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor".

32. As set forth above, Debtor has understated his income and failed to tighten his belt and also has not committed his disposable income to the Plan.

33. Additionally, Section 1190(1)(B) requires that a liquidation analysis be provided.

34. In this case, Debtor has provided a liquidation analysis attached to the Plan as Exhibit B (the "**Liquidation Analysis**") that purports to project the proceeds that would be received from liquidating the bankruptcy estate's assets.

35. The Liquidation Analysis suggests that after liquidation, costs of liquidation, and payment of secured, priority, and administrative claims, only $39,414.87 would be remaining for unsecured creditors.

36. However, there are a number of flaws in Debtor's Liquidation Analysis including that Debtor's assets are significantly undervalued in the Liquidation Analysis.

37. First, Debtor did not include the bonus of $60,397.50, which is identified as "2022 Annual Bonus from employer". *See* Filing No. 48, Exhibit C.

38. Additionally, based on the purchase prices of new furniture noted in a review of Debtor's bank statements, Debtor appears to have undervalued the "Assorted Household Goods, Furnishings, Electronics" and "Assorted Personal Items".

39. Moreover, based on statements provided by Debtor, the "Retirement Account (UBS)" appears to be an investment account and not a qualified retirement account and therefore **not** "Fully Exempt (100%)" as claimed in Debtor's liquidation analysis. The UBS account is also listed on Debtor's schedules as a "wealth management account" and not claimed as exempt on the current version of Schedule C filed with this Court. *See* Filing No. 25, p. 10.

40. Furthermore, based on bank statements provided, Debtor's claim in footnote 2 of the Liquidation Analysis that "[a]ll bank balances are jointly owned by Debtor and his non-Debtor spouse" appears to be contrary to both how the accounts are owned (many are or were owned in just Debtor's name) and Indiana Law. *See* I.C. 32-17-11-17.

41. Another significant issue is Debtor's exemption of his personal residence based on its ownership as Tenancy by Entireties. While a portion of the liquidation analysis does appear to include the value of the equity in this property, it appears that the purchase of this home in Debtor's and Debtor's non-filing spouse's name may have been a fraudulent transfer. This is based on Debtor's ownership of the prior residence and the source of the downpayment of the funds to purchase the residence.

42. If a liquidation analysis that properly valued Debtor's property were conducted, it would show over $500,000 in value that would remain upon liquidation of Debtor's assets as follows:

| **Asset**[4] | **Value** | **Less Liens** | **Less Liquidation Cost**[5] | **Remaining Value** |
|---|---|---|---|---|
| Horizon Bank | $41,410.07 | $0.00 | $0.00 | $41,410.07 |
| Toyota Savings | $51,098.31 | $0.00 | $0.00 | $51,098.31 |
| Residence | $1,050,000 | $851,346.22 | $105,000 | $93,653.78 |
| Clifton Property | $102,000 | $73,095.71 | $10,200 | $18,704.29 |
| Kankakee | $500,000 | $311,762.84 | $25,000[6] | $163,237.16 |
| Polaris Ranger | $30,000 | $21,829.95 | $3,000 | $5,170.05 |
| Bass Boat | $1,000 | $0.00 | $100 | $900.00 |
| Personal Property | $15,850 | $0.00 | $3,170 | $12,860.00 |
| UBS Account | $110,432 | $0.00 | $0.00 | $110,432.00 |
| Iraqi Currency | $600.00 | $0.00 | $0.00 | $600.00 |
| Silver | $2,325.00 | $0.00 | $0.00 | $2,325.00 |
| **Totals** | **$1,904,715.38** | **$1,258,034.72** | **$146,470.00** | **$500,390.66** |

43. Even when Debtor claims certain exemptions in the foregoing property, and accounting for the administrative claims and tax priority claims which Debtor estimates to be approximately $130,500, the amount to meet the liquidation test remains significantly higher than Debtor's estimated amount for distribution of $39,414.87.

44. In other words, if Debtors' property is properly valued, Debtor cannot meet the "best interest of creditors" or the "liquidation test" requirement, and his Plan should not be confirmed.

---

[4] By using the value assigned by Debtor, Kinetic does not consent to such assigned value and reserves the right to request an evidentiary hearing to determine the current condition and actual value of Debtor's assets to the extent it becomes appropriate to do so. Specifically, based on initial evaluation, Kinetic believes the parcels of real estate included are undervalued.

[5] Debtor has assigned a 10% liquidation value which may be high in some instances but is used in this analysis for consistency.

[6] Pursuant to the *Motion for Approval of Sale of Property of the Estate* [Filing No. 75], there "are no brokers involved with the proposed sale". As a result, the liquidation cost should be significantly less than 10%.

**D. Debtor's Plan is not proposed in good faith.**

45. Every bankruptcy case carries with it an obligation of good faith. 11 U.S.C. § 1129(a)(3); *See Marrama v. Citizens Bank of Mass.,* 549 U.S. 365, 375, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007).

46. "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan....". *Deans v. O'Donnell (In re Deans),* 692 F.2d 968, 972 (4th Cir. 1982) (citing 9 COLLIER ON BANKRUPTCY at 319 (14th ed. 1978)). The Fourth Circuit has held that a non-exclusive list of factors might include:

> [N]ot only the percentage of proposed repayment, but also the debtor's financial situation, the period of time payment will be made, the debtor's employment history and prospects, the nature and amount of unsecured claims, the debtor's past bankruptcy filings, the debtor's honesty in representing facts, and any unusual or exceptional problems facing the particular debtor.

*See id.* (stating further that the totality of the circumstances must be examined on a case-by-case basis); *see also Neufeld v. Freeman*, 794 F.2d 149 (4th Cir. 1986) (holding that the court may consider prepetition conduct in determining the good faith in proposing a bankruptcy plan).

47. Section 1129(a)(3) requires that a plan be filed in good faith. 11 U.S.C. § 1191(a). Good faith is a rather amorphous concept which is nonetheless tightly woven in the fabric of cases filed under chapters 11, 12 and 13. *In re Wickliffe*, 106 B.R. 470, 472 (Bankr. W.D. Ky. 1989). No plan of reorganization may be confirmed under any of those chapters unless the court finds it to be, "... proposed in good faith and not by any means forbidden by law". 11 U.S.C. §§ 1129(a)(3), 1225(a)(3) and 1325(a)(3). *Id.*

48. In this case, there are various factors that suggest this plan has not been filed in good faith.

49. First, prior to the filing of the Petition, notwithstanding Debtor having testified at the 341 meeting that he expected to make less due to a change in his employment, Debtor purchased a more expensive residence which was deeded in Debtor's and Debtor's non-filing spouse's name, despite the prior residence having been deeded in only Debtor's name and the funds used for the downpayment for the purchase of Debtor's current residence coming from an account solely in Debtor's name.

50. Additionally, as set forth herein above, Debtor is not offering to pay anything to unsecured creditors from his disposable income – namely his bonuses.

51. Another factor is the nature and amount of unsecured claims. Specifically, in multiple filings in this matter, Debtor has indicated that he was not involved in operation of Dunn Deal since February 2019. However, Debtor executed the Demand Promissory Note and Security Agreement with Kinetic in June, 2022 on behalf of Dunn Deal and has acknowledged his obligations to Dunn Deal in various filings in this matter.

52. Additionally, notwithstanding the incurrence of significant debt on behalf of Dunn Deal in 2022, in addition to purchasing a more expensive residence, Debtor also purchased, among other things, new furniture, a 2022 Bass Pro Boat, and a Polaris Ranger – both of which he seeks to keep. Debtor also purchased a secondary/vacation home in late 2021.

53. Although Debtor is likely sincere in his belief that he needs relief under the Bankruptcy Code, he has simply not done the right things that would show he is actually taking this opportunity seriously. Debtor appears to want to enjoy the benefits of filing for bankruptcy protection without suffering the burdens.

54. Debtor is proposing to pay unsecured creditors less than one cent on the dollar (based on the claims on file) and assign his claims against former business partners to the unsecured creditors to pursue. Notably, in the Liquidation Analysis, Debtor values the very claims he seeks to assign to unsecured creditors at $0.00.

55. There are many hard-working business or former business owners that deserve second and even third chances. However, in this case, there are simply too many factors that tend to show this Plan was filed in bad faith, due to, among other things, the Plan's failure to comply with the various provisions of the Bankruptcy Code.

**E. Debtor's Plan Appears to Unfairly Discriminate between General Unsecured Creditors.**

56. Debtor's Plan cannot be confirmed because it appears to unfairly discriminate between general unsecured creditors.

57. Specifically, Class 5 provides for payments to Synchrony Bank.

58. However, the proof of claim filed by Synchrony Bank indicates that the claim is an unsecured claim. *See* Claim No. 10, Part 2, #s 8 & 9.

59. Debtor has not provided any explanation as to why he proposes to pay Synchrony Bank's unsecured claim in full while proposing to pay next to nothing to other general unsecured creditors.

60. Debtor is required to, among other things, give a reasonable basis for discriminating between two similarly situated creditors and he has failed to do so.

61. As such, Kinetic also objects to Debtor's Plan on the basis that the Plan unfairly discriminates between one of his general unsecured creditors and all other general unsecured creditors. Kinetic requests the Court require Debtor to amend his Plan to consolidate all general unsecured claims into one class. Doing so will ensure that all

unsecured creditors are treated fairly and equally and that Debtor is not unfairly discriminating against some of his general unsecured creditors.

**F. In the event any plan is confirmed, including the Plan, the Court should require continual reporting by Debtor and certain provisions should not be included in any order confirming the Plan.**

62. Based on the tenuous financial condition of Debtor, any plan in which Debtor seeks to have confirmed, including the Plan, should require that the Debtor, on a monthly basis, file a report with the Court comparing actual income, receipts, and expenses to budgeted income, receipts, and expenses. Debtor should also be required to report any bonuses he receives during the term of any plan which should not be less than five (5) years.

63. Kinetic also specifically objects to the inclusion in any confirmation order authorizing Debtor to sell any of his assets after Confirmation without further Order of the Bankruptcy Court. *See* Plan, Section 11.6.

64. Additionally, Kinetic specifically objects to Section 16.1 of the Plan and asserts that any unclaimed property should not become property of the Debtor, rather any such amount should be distributed to Debtor's general unsecured creditors that have claimed property.

65. Kinetic also requires clarification of the apparent conflict between Section 11.3 – which generally provides for an assignment of certain claims (defined as the Third Party Targets) – and Section 19.1 which appears to indicate that Debtor shall retain all claims and causes of action and the proceeds thereof shall be property of Debtor.

66. Finally, based on Debtor's level of income and the nominal amount he is seeking to pay unsecured creditors ($50,000), Debtor should be required to commit his

bonuses for five (5) years to the Plan, meet the "best interest of creditors" requirement, and also the liquidation test.

**WHEREFORE**, Kinetic Advantage, LLC, by counsel, respectfully requests that the Court deny confirmation of the Plan without significant and substantial changes and grant Kinetic Advantage, LLC all other relief deemed just and proper by the Court.

Respectfully submitted,

*/s/ Weston E. Overturf*
Weston E. Overturf, Attorney No. 27281-49
KROGER GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204
317-777-7443
woverturf@kgrlaw.com

*Attorneys for Creditor Kinetic Advantage LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of May, 2023 a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

- **Douglas R. Adelsperger** trustee@adelspergerlawoffices.com, dra@trustesolutions.net
- **Matthew R. Brooks** matthew.brooks@troutmansanders.com
- **Joseph P Chamley** jchamley@efbclaw.com, jnieman@efbclaw.com
- **Daniel Patrick Dawson** ddawson@nisen.com, adrag@nisen.com
- **Nancy J. Gargula** USTPRegion10.SO.ECF@usdoj.gov
- **Mark D. Kundmueller** mark.kundmueller@troutman.com, Matthew.Brooks@troutman.com;Susan.henry@troutman.com
- **Weston Erick Overturf** woverturf@kgrlaw.com, dgastenveld@kgrlaw.com
- **Jessica Sharon Owens** bankruptcy@doylelegal.com
- **Susan Jaffe Roberts** Susan.J.Roberts@usdoj.gov
- **Brian Tuinenga** brian.tuinenga@usdoj.gov
- **Brian P. Welch** bwelch@craneheyman.com, gbalderas@burkelaw.com
- **David K. Welch** dwelch@burkelaw.com, gbalderas@burkelaw.com

I further certify that on the 31st day of May, 2023, a copy of the foregoing was mailed by first-class United States mail, postage prepaid, and properly addressed to the following:

NONE

*/s/ Weston E. Overturf*
Weston E. Overturf